The next case is United States of America v. Scott Wilbert. Good morning. We need attorney for appellant. Ms. Feldman, if you're speaking, you're on mute. Good morning, Your Honors. If I may, I just wanted to advise the court that I know that Ms. Feldman had some difficulties logging on to Zoom, and I know that the staff was trying to assist her, that your IT people were trying to assist her with this. Counsel, Ms. Lee, thank you. Would you object if we held this argument and went to the next one? I think I'm on the phone. Your Honor, I'm on the phone at this time. Oh, good. I appreciate everyone's patience. This is Orza Feldman on behalf of the appellant, Mr. Wilbert under docket 19-2173. Good morning, Your Honors. Good morning. Your Honors, I would just ask that you notify me when my time is up since I can't see the Orza. I will do that. Thank you very much. Perhaps we could restart. Oh, never mind. Excuse me. Okay. Your Honor, in the first instance, I would ask that the court affirm the concept that the appellant in this case had a reasonable expectation of privacy in the chat that he engaged in in the peer-to-peer Omegle website or chat room, however you want to address it. The government is disputing that, but it is clear that under this circuit's prior case law in Lipschitz and other cases all across the country that Mr. Wilbert had the right to challenge this search under the authority that this was a private communication and the nature of the peer-to-peer platform that Omegle has allows him to dispute this search. I know that this is an issue that the government believes remains open, but I would ask that this court close that issue in this that the citizens of the United States do have an expectation of privacy in these kinds of communications. That would be my first request of the court in this particular case. Moving on from that issue, it is the appellant's position that the warrant in this particular case was facially deficient in two specific ways. The first being the description of the premises to be searched and the second being the description of the content of the Omegle chat, whether or not it sufficiently described what was viewed and whether the contents of that description would give the magistrate, Judge Argento in this case, sufficient cause to issue the warrant or sufficient probable cause to issue the warrant. It is the appellant's position that the warrant was overbroad, that the warrant was not specific enough, and that but for the misleading contents of the warrant, they would not have been able to- What is the issue with respect to the description of the premises? I mean, it said upper, it said the upper apartment. You don't think that was sufficient? Well, it described the premises as a multi-level building, which leads one to believe that there is an upper apartment. In other words, that somehow the apartments are stacked on top of the other. That is not exactly the premises. And it also- Let me stop you there for a second, please. What would you have the warrant say in order to comport with what you want us to tell magistrate judges henceforth and agents henceforth when they're applying? I think that it has to describe the exact area. So if the individual rents a room in a building, it should describe that he rents a room in a building, not an apartment. If, for example- What if it's a one-room apartment? Well, there's a difference between a room in a building and a one-room apartment. An apartment is different than necessarily a room. It also- Up here in the country, there isn't much difference for me. Isn't this something that the magistrate judge can take into account in terms of specificity? Well, I think that the magistrate is limited by the description that's in the warrant. The magistrate- In the application. In the application. The magistrate could not use whatever they think or interpret. They're contained in the application itself, in the four corners of the application. And the whole purpose of this is to make sure that law enforcement is precise, that law enforcement does not mislead or provide information to our magistrates that is less than accurate. Because if the whole system will rely on magistrates using their own information or their own beliefs or their own interpretations, then it breaks down the whole warrant system. Was there anyone upstairs beside Mr. Wilbert? That I don't know. I was not trial counsel. I did not see the premises. I did not travel to Rochester to see what it is. I'm relying on what is contained in the application. Right. It's set up. And if there was no one else up- Well, the application says that this search is to include. It indicates the above mentioned properties described as being a green and white colored multi-level residential building. It identifies the number of the building. It tells you where the building is. It tells you that there's an entrance door, that it's attached to another building. It's attached to 634. And then it says this search is to include the upstairs apartment, the subject of 634 Garston Avenue, the subject of this investigation, and any outbuildings, real property, vehicles, and curtilage utilized by the subject at the mentioned location. So it's the appellant's position that this description is overbroad because what they were looking for was a computer or apparently some kind of computer information. So when they're talking about all of these things, it's our position that it was overbroad. And what should have happened is to include, you know, his particularized living area. Even if they don't know it? They know he's at this building space? There isn't anything to indicate that it's chopped up? They know he's upstairs. Well, I mean, they obviously know what the building's like because they went there and took a picture. So they have some idea of what this building is all about and what area he may or may not occupy. So how much else is there in the apartment up space? Yeah, I apologize, Your Honors, but I did not actually view it, so I don't know the answer to that. And that's not in the record for us to review? No, it does not appear to be in the record. In addition, Your Honor, I would move on to whether or not the other description of what was in the image that is described on page 4 and going on to page 5 is also inaccurate, at least as far as Judge Argento was concerned. It's clear, I believe, and my opposing counsel can speak to this further, but it was clear to me that Judge Argento never viewed this image. Never what? Say again? That Judge Argento never viewed the image. It was not attached to the application as far as I can gather from the record that's before the court. And therefore, she could not possibly make a neutral and detached determination as to what was on the image or in the image that formed the basis for the application. What's here is that the officer stated that the image was of a prepubescent female between 4 years of age and 7 years of age who was engaged in oral sex with a canine. And the question is, this is his interpretation of what the image is. When you read the testimony of the various witnesses who were called for the suppression hearing, there are various interpretations of what this image contained. And so, it would be appellant's argument that the magistrate could never, couldn't have made an independent determination of what the image was and whether, in fact, it contained what the officer indicated it contained because it was not attached to the law. I'm sitting here with two former district judges and I'm sure they've issued warrants, or my suspicion would be they've issued warrants based solely on an affidavit of an applicant who described something. Yeah, there was a case, certainly out of the, there are some cases out of the Sixth Circuit that talk about that the magistrate must have performed a neutral and detached function. And how do you perform a neutral and detached function if what you're relying on is a description of an image? I mean, this is a unique situation because, you know, as we all know, you know pornography when you see it, right? The Supreme Court has said that many a time. What you're arguing to us is that anytime officers, agents want to conduct a search based on the presence or the suspected presence of child pornography, they have to have an image that can be shown to the issuing judge. And I think that would be helpful. Well, of course it would be helpful, but that's not the law, is it? What case stands for that proposition? And I'll let you finish because it's up to the presider, of course, but you're somewhat over. Oh, I apologize. I would just argue that if what we're asking magistrates to do is determine that there is in fact child pornography, and there's a lot of questions to what this image really showed, the officer who testified at the suppression hearing said, well, it was a girl and she was lying on a bed and there was a dog near her vagina. And then there was someone else who said, well, it was a girl with a dog. I am not sure what it was, but he specifically says in his application that this child was engaged in oral sex with a canine. And then in the suppression hearing, he backtracks and says, well, I don't know that she was engaged in oral sex with the canine, but that's what he put in his application. So I think this has to be looked at carefully, your honors. And I would ask that the court reverse the district court's finding and suppress the evidence. Thank you, counsel. We'll hear from counsel for the government. Good morning, your honors. May it please the court. Turning to the issue of the image and what it consisted of, Judge Feldman in his report and recommendation indicated that he had the opportunity to review this image during the suppression hearing. And he indicated that he agreed with the description, which investigator Ceretto provided with respect to what the image showed. Specifically, he made the finding that it was a reasonably accurate, I guess, description of what the image contained. There is no question that this image constituted child pornography. And more specifically, would be sufficient as probable cause in order for investigator Ceretto to depend upon when he applied for the search warrant before Judge Argento. The crux of the issue here is whether or not that search warrant is supported by adequate probable cause. And the simple answer is yes, it was. Turning to counsel's other issue with respect to the description, I think this argument stems from a more narrow conception of buildings and apartments. Certainly for those of us who live in upstate New York, apartments can occur anywhere. They can occur in residential buildings. They can occur in a ranch house. They can occur in a Victorian house where you have an apartment that has a bedroom, a kitchen, and everything along those lines. So when Judge Argento is presented with the application and specifically issues a search warrant that says 634 Garson Avenue, apartment up, that specifies the residence for Mr. Wilbert himself. Was this not an apartment as we downstaters would understand it to be? I don't believe so, Your Honor. I believe this was probably in a residential home, you know, next to, that was like, part of it is being used, the next door building is used as a nail salon, or excuse me, as a hair salon, but it's not as downstaters would, you know, envision a multi-level storied brick building with, you know, five floors or whatever. So, but it is correct to describe it as a multi-level building because it's more than one level and the apartment occupies the space upstairs. Indeed. Ms. Lee, just while we're talking about the house, I'm sorry to interrupt you, but did the photographs ever show, that are referenced in the application, ever show up? And are they part of the record? I don't see them as part of the record. Yeah, I didn't either. But yeah, I don't see them as part of the record, but in any event, the reality is though, the question is whether or not Judge Argento was neutral and detached in evaluating these things. And there's no indication that she was not, that she did not undertake her function as her, as a magistrate and do her due diligence when it came to examining Investigator Ceretto's application and then signing off on the warrant. Forgive me for interrupting, Counsel. Would you to discuss, will you discuss the two different slides that are at issue in this case? Yes. Pornography and one is arguably child pornography. Will you discuss that and which one came before the magistrate? The one that, actually both images which were downloaded during the time period or which the company Omegle captured were part of the suppression hearing. And the image that constituted child pornography is the one image which is referred to as CD, C6D0. And that was the other one. That was downloaded second, wasn't it? That was, it was, it was downloaded second, but as Investigator Ceretto explained during the course of the hearing, the way he described it in his warrant application was in reference to the entire transaction. A continuous, a continuous thing. That's what he said. But the first image was not pornography. Isn't that correct? The first image was difficult to determine what it was. And it's, it's not, it's unclear what the first image contained. That one relates to the time listed in the warrant, doesn't it? The first image, which was not pornographic to the best of our knowledge. To the best of our knowledge. And the time relates to that one. Correct? That's correct. So there is a little bit of a... What do we make of that? What are we to make of that, that the warrant misidentified the slide? I don't think it mis, I think it misidentified the time. I don't think it misidentified the slide. So the only slide, the only... The slide was related to the time, right? Um, I don't, I don't think so because only one image was described. And the one image which, uh, everyone had seen throughout the proceedings that was relied upon for probable cause was the image involving the dog. That's the one that's specifically described by Omegle in their complaint to the National Center for Missing and Exploited Children. That's the slide to which, uh, Investigator Ceretto referred to. And that's the operating image that, uh, forms the basis for probable cause for the, for the search warrant. And then ultimately though, Your Honors, uh, to the extent that, uh, I would agree, Judge Pooler, it wasn't precise. Um, however, the, the review function here is not, not for pure precision or exactment, but the question is, does probable cause support the search warrant? And even if it doesn't under these circumstances, uh, would the good faith exception of Leon apply? And the government respectfully submits that it would under these circumstances here. Investigator Ceretto, uh, gave the information, um, gave the date as to when this upload occurred, talked about Mr. Wilbert's background and circumstances, put all this information in front of Judge Argento, discussed the image that was the concerning image, the one involving the dog. And then, um, uh, it was up to Judge Argento to either issue the warrant or not. And she did. Um, and, uh, I would say that what's significant here is that Judge Feldman specifically said he agreed with Investigator Ceretto's, uh, in, uh, description of what this image contained. And, um, I don't think there's any way you can look at this image and not say that it is not child pornography, or it doesn't form the basis for adequate probable cause to support, uh, an investigation or a search for child pornography. Am I correct in remembering that the child was also handcuffed? Um, it's, uh, not handcuffed, Your Honor, per se, but she appears to be bound. Um, there is some sort of binding and her arms are crossed, uh, on her head. So, you know, even if, uh, I, I know that, uh, Ms. Feldman's argument was, well, you don't see anything actually happening. I don't think the description of, for, uh, or the definition for child, uh, pornography requires actual acts that could require simulated acts. And that's why it's also only a question of probable cause. At this point, it's not a question of guilt or non-guilt. Exactly, Your Honor. So based on all these circumstances and based on the totality of the circumstances here, uh, the District Court certainly did not err in denying, um, Mr. Wilbert's motion for suppression based on the search warrant. And unless, uh, Your Honors have any further questions, uh, the government will rest on its brief. Thank you, counsel. Thank you. Um, Ms. Feldman, you were trained one minute for rebuttal. Yes, Your Honor. I would just like to touch on, uh, Your Honor's questions about really the, the kind of floppiness of this, uh, warrant application. Uh, and I would like just to that the complaint was in the form of a cyber-tip line report. The complaint was in regards to an image of a prepubescent female engaged in oral sex with a canine. But the cyber-tip and, and the testimony at the trial was that the cyber-tip was, um, child pornography unconfirmed. And, um, and there, even at the testimony of the, um, the witness from NCMEC indicated that, you know, it was a girl with a dog. He didn't specify anything. And, and it's my impression that really the, the officer here well, went well beyond what, um, what he should have in making this application. And clearly, uh, there was no reason for him not to, uh, specify the correct time, uh, because he had the correct time. He knew the correct time. And, and it's, it's, it's just, you're looking at the whole application. It was, um, it was misleading. And, uh, otherwise I would rest on my brief with respect to all other points. Thank you, counsel. Thank you both. We'll reserve decision. The next matter. And thank you very much for accommodating me by phone, your honors. I really do appreciate that. Only sorry you couldn't, we couldn't see you, but thank you. Me as well. Thank you. Bye-bye.